The paper argument this morning is United States v. Nelson. Mr. Abdelnoor Good morning. And may it please the court, Dennis Abdelnoor, on behalf of Appellant Delrico Nelson. I'd like to discuss two issues. The first, whether Mr. Nelson's waiver of his right to a revocation hearing was knowing and voluntary. And second, what the proper remedy is for that, in our view, invalid waiver. Mr. Nelson's waiver was not knowing and voluntary because he did not understand the fundamental nature of the violation against him. And because he did not understand the procedural protections afforded to him and the consequences of giving those up. As to the nature of the violation, the proceeding started in a bit of confusion because the state court charges that underlied the revocation of his supervised release, his petition, were still pending. The district court stated a preference to go with those first. The parties decided to go with the revocation hearing first. And that's important because the first thing the district court asked Mr. Nelson's attorney was whether he was willing to stipulate or agree to the facts underlying those state court violations. And he said he was not. He was not willing to agree to those charges. He had an intent to fight those charges in the state court. The only thing he was willing to agree to was that there was a violation of his supervised release. That's important because later in the hearing, Mr. Nelson, unprompted when discussing with the district court, said, in my view, I'm in violation of my supervised release because, just because I was arrested. But the district court corrected his misimpression on that ground, right? Well, the district court, so he says it twice. He says it first early in the hearing, and he says it before a bond and the waiver is taken. He says it again, and this is at about page 35 of the transcript. He says it again. And at that point, that's when the district court hears it and makes an attempt to correct it. And I agree that there was an attempt made. We think the attempt to correct it was insufficient. And it's insufficient for two reasons. One is to the timing. He said it the first time early in the hearing. He said, I believe it just, I'm in violation just because I was arrested, the conduct doesn't matter. Now his counsel took a break, came back on the record and asked him questions. But the questions went in a bit of a different direction and nobody, including the court or his attorney addressed the point about his misunderstanding of the violation. When he says it again at this point in time, the district judge court had already accepted the waiver and found a violation, and this was during sentencing. And so when he said it again, first of all, it sort of confirms that that misunderstanding persisted throughout the hearing and it's almost like an agreement. The agreement was made with the government for a recommended sentence. And it was based on that misunderstanding. The waiver was proffered and taken. And then later on when sentencing was being discussed, the district court did hear him and said, wait a second, just being arrested isn't enough. And we think the correction at that point in the hearing was insufficient because at the very least, the district court should have at least given him an opportunity to say, one, I'm going to explain to you what the procedures are, what the protections are that you're afforded, and what the consequences of waiver are, and then we kind of need to take a step back because you've already offered your waiver to me and I've already accepted it. You need to talk to your lawyer. You need to think about whether or not that waiver is still something you want to offer to me, but that didn't happen. And I think the second point on that is the sufficiency of the correction. We think it was insufficient because the district court said, it's not just being arrested, you could go to a hearing and the government would call witnesses to testify as described earlier. But the court didn't go on to say you'd be presumed innocent. You'd have these procedural protections. You could put on evidence on your own behalf. You could cross examine the government's witnesses and challenge them. And so that fundamental misunderstanding of, it's not even the charges that underlie the revocation, it's the violation itself. And if that misunderstanding was present, then that leads into the second part, which is, he didn't understand the procedural protections that he was giving up and there's nothing in the record, and I don't think the government seriously contends that there was, that he understood those protections or that they were adequately explained to him. And again, that omission is important because if he believed a violation is just the fact of an arrest, then putting on his own evidence or cross-examining the government's witnesses is, in some respects, meaningless. If he understood that the government had to prove the underlying charges by preponderance, that he was presumed innocent, then the protections of putting on evidence to defend himself and cross-examining the government's witnesses, which he seemed to intend to want to do in the state court proceedings, would have been that much more meaningful. I said that the government doesn't seriously contend that those protections were explained. They point to a couple of the lines in the transcript where the district court judge says, you could put the government to their proof and they would have, you could have a hearing and the government would prove it. That's at page 12 of the transcript. But really what the government argues is, Mr. Nelson knew of his procedural protections because they were explained to him in full in 2016 in a different revocation hearing before a different judge on different charges. In our view, that's insufficient for at least two reasons. First is, that's not fairly the circumstances or the totality of the circumstances that we should be looking at to ascertain whether Mr. Nelson's waiver in 2018 was sufficient. And second, even if you wanted to go back and consider what was told to Mr. Nelson, it's an unreasonable assumption to even assume he would have remembered what was told to him two years earlier, let alone then to take the pieces and put them together to understand and to know how they would apply in this new proceeding in 2018. In our view, Mr. Nelson's waiver was not made knowingly and was therefore ineffective. The second issue is, what is the proper remedy? In our view, Mr. Nelson's conviction should be reversed and the court should remand for a new hearing so that he has an opportunity to contest his revocation. That was the course of action taken in LeBlanc. That was the course of action recommended in Correa-Torres in the First Circuit. The government makes two arguments. The government argues that plain error should apply, one, and that under plain error, we couldn't satisfy that standard. And we disagree on both counts. First, assuming plain error, Mr. Nelson's fundamental misunderstanding of what a violation was and what it required goes to the very heart of the constitutional protections that are afforded to him. And that's what this court said in Fard. That's what this court said in Bradley, albeit in the guilty plea context. But every case, whether it be guilty plea or revocation of supervised release, every case that has been cited in the briefs in which a defendant has been found not to fully comprehend and understand the nature of the charges against him, the remedy has been reversal and remand, whether it be harmless error, and that's in the guilty plea context, or even under plain error standard review, which is the Pineda-Buenaventura case. And of course, I go back to LeBlanc and Correa-Torres in the supervised release. Both of those aren't explicit about whether or not they're applying plain error review, but the remedy is reversal and remand. Second, finally, whether or not plain error should apply in the first instance. We took a close look at the issue from our perspective. It seems to be open in the Seventh Circuit. The government cited non-binding opinions from other circuits. We looked at the dissenting opinion in Vigil from the Ninth Circuit, and that judge looked at the issue quite carefully and the Supreme Court authority and said, there's a difference between invalid waiver, which is what we have here, and a forfeited error, and that different matters. That difference matters. We think he has the better of the reasoning. I'll save my remaining time for about a moment. Thank you, counsel. Mr. Knight. May it please the court. My name is Kevin Knight. I represent the United States. I represented the United States in the district court below. Defendant Nelson made a strategic and counseled decision in the district court to forego his revocation hearing in exchange for a plea for leniency. That bet didn't pay out, but the decision to place it was knowing and voluntary. I'd like to jump on a point that you made, Judge Barrett, that defendant's suggestion that he somehow believed or was laboring under the misimpression that he had violated terms of his supervised release simply by being arrested, that was explicitly corrected by the district court below. What about counsel's argument that it was too little, too late? So I have two responses to that. So counsel suggests that it's too little, too late as a matter of timing and as a matter of substance, so I'd like to parse those out. As a matter of timing, we cited the United States versus Mean House, which explains as a general principle that a district court remains free during the pendency of a hearing to correct potential misimpressions or errors during that same hearing. And I think any other rule would not make any sense, right? Of course, a district court remains free to correct those misimpressions as they arise or as the district court comes to appreciate them. Otherwise, we'd have a situation where I guess we would just certify things for appeal after a misstatement or the court, district court recognizes a mistake. So as a matter of the timing argument, I think, is contradicted by Mean House and by common sense because we want district courts to have the flexibility to go back, correct misimpressions and reaffirm to their own minds that the proceedings in front of them are on track. As a matter of substance, I think that standing alone, Judge Darrow's admonition was acceptable in context. We heard Mr. Ablenor in his brief and today suggests that Judge Darrow should have somehow taken a step back and initiated what would be the substantive equivalent of a full Rule 11 colloquy. That's simply not required. Every time this court has had an occasion to consider a proceeding under Rule 32.1, it has taken pains to distinguish those proceedings from sentencings, from guilty pleas, from criminal trials. This court has said that revocation proceedings are much less formal than a criminal trial. They're subject to lesser standards. The due process framework is flexible. The focus is on fundamental fairness. We cited Morrison v. Brewer, which is sort of the progenitor case. It was in the parole revocation context in 1972 and the Supreme Court explained in that case that such procedural protections are due as the particular situation demands. And that's of a piece with this court's reiteration that the review is for the totality of the circumstances. And we have in 2016, just over two years before this hearing, Judge Mim walking the defendant through what's the functional equivalent of a full Rule 11 colloquy. Of course, Judge Mim wasn't required to do that, but it informs the calculus here. I don't think I could put it better than defendant did in his reply brief. I'm quoting from page 34 of the reply. Judge Mim, in 2016, walked Mr. Nelson through each procedural protection, engaging Mr. Nelson along the way. Well, of course he did. And that should inform the court's assessment of whether or not Judge Darrow's admonition and correction stands. I'd also like to make the more general point that Mr. Nelson's observations about the putative effect of his arrest is contradicted by every other document in the record. In our brief, we explain that in the initial judgment that was entered after his sentencing for the substantive offense, and in the revocation judgment that Judge Mim entered, those are records 33 and 112, the terms of Mr. Nelson's supervised release are enumerated. And both of those documents explain that an arrest standing alone is not sufficient to violate the terms of a supervised release. If he is arrested, he's obligated to report to his probation officer within 72 hours. That's all that those documents say about an arrest standing alone. In contrast, both those documents explain that if he commits a new law violation, that's a per se violation of the terms of a supervised release. And we're not just relying on Mr. Nelson's understanding of those documents in the record. Judge Mim, in 2016, again, explicitly enumerated those conditions to the defendant, and he acknowledged understanding of the same. I'd also like to make a general point on procedure. In defendant's opening brief, he says, one, his waiver was not knowing involuntary because he believed he had violated the terms of his supervised release just by being arrested. Two, he didn't appreciate the procedural protections that were afforded to him. And three, that his waiver was somehow conditioned upon receipt of arguments in support of the jointly recommended disposition. In his reply brief, and then today before your honors, it seems that he's abandoning that third argument, and I suggest that's with good reason. In our briefing, we cited authority that explains that we are not required, and by we I mean the government, is not required to do anything other than explain that we support our jointly recommended disposition. We cited Lewis and Salazar for the proposition that so long as the government sticks to that joint recommendation, we're also free to comment on sentencing factors. The defendant received what he bargained for when we recommended jointly to the court that he received the 41 month sentence, and then we commented on those sentencing factors. And in fact, as a factual matter, I made various arguments that were legally relevant in support of that joint recommendation. I argued that a sentence of 41 months was consistent with the parsimony clause. I argued that the need for specific deterrence was less acute given the pending state charges. And I argued that Mr. Nelson was due some consideration for foregoing what would have been a probably day-long revocation proceeding. And the district court acknowledged those arguments. I'd like to say a word about the standard of review. And the first thing I'd like to say is that it's not dispositive here. As we explain in our brief, Mr. Nelson loses because he knew what he was doing when he agreed to forego a revocation hearing for the second time. But if your honors do reach the question of what standard of review applies, you would be the first court to accept Mr. Applenor's position. The second, the fourth, the sixth, and the ninth circuits have all said that plain error review applies when assessing whether or not a defendant's waiver of his entitlement to a revocation hearing was knowing and voluntary if he doesn't raise it below. And a rule like that only makes good sense. It would be entirely backwards and inconsistent with this court's precedent to take a more searching standard of review and apply it to waivers under Rule 32.1 than guilty pleas under Rule 11. That's something that this court has repeatedly disavowed any interest in doing. I think it also bears repeating that there's not this sort of logistical impediment in the revocation context the defendant identifies in their brief. In their brief, they suggest that a more fulsome standard of review is perhaps appropriate for waivers in the revocation context than the guilty plea context because there's this intervening period of time between a guilty plea to a substantive offense and sentencing that typically doesn't take place in revocation hearing where sentencing immediately follows the waiver or the adjudication of violation. I think this record explains that that's a fallacious concern. In this record, we have a defendant who said something that gave the district court pause at the sentencing portion of the revocation hearing. The district court took a break, admonished him that an arrest standing was not enough, and then continued with the sentencing. The notion that we should walk away from plain error review simply because revocation hearings are shorter, I think, can't bear the weight the defendant assigns it. Defendant also cites to the dissent in, I think, it's VIGIL in the Ninth Circuit. I submit that VIGIL stands for the proposition that defendant is running directly contrary to. VIGIL, the majority opinion, applies plain error. The district judge in dissent says that it should not, but VIGIL stands for the argument we're making today, Your Honors. And I think the dissent in VIGIL, to the extent you decide to lock horns with it, pretty widely overreads ELANO. ELANO predates the decisions in the Second, Fourth, and Sixth Circuits that we cite, and I think they have the better of the argument. I'd also like to briefly talk about two decisions that we cited in support of the proposition that this court should take consideration of Judge Mims' procedural colloquy. Defendant suggests that it's too far out of time for us to consider as we assess his waiver in 2018. I think that's wrong. In 2018, this court in Scott took countenance of a defendant's decision to forego his opportunity to allocute at an earlier hearing in a roughly analogous time period. The defendant in that case was contesting that he had somehow been prejudiced by not having the opportunity to allocate, and this court said that he'd had a previous opportunity at an earlier hearing approximately the same period of time before, and we can infer that he understood that right based on that earlier hearing. We also cited Tapia Escalera out of the First Circuit, which is actually in the revocation context, wherein the First Circuit felt comfortable inferring that a defendant was proceeding in a knowing and voluntary way based on his prior experience at a revocation hearing. This defendant was in the same procedural posture. He was facing new law violations, just like he was facing in front of Judge Mims. He knew what he was doing. In summary, Your Honors, this defendant made a strategic play with the advice of counsel in an attempt to get a below-policy-statement-provision sentence. His buyer's remorse is not grounds for reversal. He understood what he was doing, and he should have to live with those consequences. Subject to Your Honors' questions? I will turn the balance of my time to the court. Thank you. Anything further, counsel? You have about 30 seconds. Thank you, Your Honor. First, the third argument regarding the sentencing discussion, we have not waived it. That's a further circumstance. We focused on the first two, because those are much more powerful. Second, back to the earlier questions on correction, we are not saying that the district court was stripped of any authority to correct this error. Absolutely, the district court could have done it. But what the district court did in this case without giving Mr. Nelson an opportunity to reconsider that waiver, once it fully and properly explained the procedural protections and the nature of the hearing, that the correction didn't occur and it was ineffective. Thank you very much. Thank you very much, counsel. Mr. Abdenour, we appreciate your willingness to accept the appointment and your assistance to the court, as well as your client. The case is taken under advisement.